**In the Matter of Joelanne WIKES,
Bankrupt and Appellant,**

**v.**

**James A. A. SMITH, Trustee and
Appellee.**

**No. 26362.**

United States Court of Appeals,
Ninth Circuit.

Aug. 30, 1972.

As Amended on Denial of Rehearing
Oct. 19, 1972.

Ira D. Riskin (argued), of Gould, Magaram & Riskin, Los Angeles, Cal., for bankrupt-appellant.

Richard M. Moneymaker (argued), of Tiernan & Moneymaker, Los Angeles, Cal., for trustee-appellee.

Before MERRILL and GOODWIN, Circuit Judges, and LINDBERG, District Judge.*

LINDBERG, WILLIAM J., District Judge.

Appellant Joelanne Wikes and her husband Gerald each filed a voluntary petition in bankruptcy on November 13, 1968. The two proceedings were consolidated by the District Court on its own motion, and the same trustee was appointed to administer each estate.

For some years prior to bankruptcy, Gerald and Joelanne worked together as husband and wife to operate a small, unincorporated family business. In October of 1966, they used funds generated by that business to purchase an automobile. The record does not indicate pre-

---

* The Honorable William J. Lindberg, United States District Judge for the Western District of Washington, sitting by designation.

cisely how title and registration were taken; it reveals only that they contained the names of both Gerald and Joelanne. The automobile was sold in the latter part of October, 1968, for approximately $2,000.00. Gerald and Joelanne each deposited $1,000.00 of the proceeds in a separate federal savings and loan account on October 31, 1968, approximately two weeks before the petitions were filed.

■ The trustee permitted Gerald to claim the $1,000 exemption provided for savings and loan accounts by California Code of Civil Procedure § 690.21[1] and California Financial Code §§ 7611[2] and 11,000,[3] as incorporated into the Bankruptcy Act by 11 U.S.C. § 24 (§ 6 of the Act), but refused to allow the same exemption for Joelanne. The Referee and the District Court affirmed the action of the trustee on the ground that the deposit of one-half of the proceeds of the automobile in the separate account of Joelanne constituted a fraudulent transfer by Gerald which was void against the trustee under § 67d and § 70e of the Bankruptcy Act. Since we have concluded that the deposit was a transfer voidable by creditors under California law, and therefore was void against the trustee under § 70e, we do not consider its status under § 67d.

Both § 70e and § 70a provide a foundation for appellee's right to administer the funds in Joelanne's account for the benefit of Gerald's creditors,[4] though, as indicated, the ultimate propriety of his action depends upon California law. Subsection (5) of § 70a[5] automatically vested title in appellee, as trustee of Gerald, to two different kinds of property; that which Gerald himself could have transferred prior to the filing of the petition and that upon which Gerald's creditors could have levied prior to the petition. Appellee here can claim no title to the savings and loan account through any right of Gerald to transfer the funds since any such right which Gerald may otherwise have possessed was eliminated by California Financial Code § 11,200.[6] Appellee, therefore,

1. This section exempted

"Shares of stock in any building and loan association to the value of one thousand dollars." Stats.1935, c. 723, p. 1970, § 21, repealed by Stats.1970, c. 1523, p. 3075, § 43; see now, Code of Civil Procedure § 690.7.

2. "The shares of associations issuing neither stock nor investment certificates, and the dividends credited thereon are exempt from attachment or execution and proceedings supplementary thereto to the value of one thousand dollars ($1,000)." Stats.1951, c. 364, p. 1024, § 7611, operative Sept. 9, 1953, repealed by Stats.1970, c. 1523, p. 3083, § 60; see now, Code of Civil Procedure § 690.7.

3. "Every federal savings and loan association . . . and the holders of shares or share accounts issued by any such association, respectively, have all the rights, powers, and privileges, and are entitled to the same exemptions and immunities granted, respectively, to savings and loan associations organized under the laws of this State and to the holders of investment certificates, membership shares, or guarantee stock of domestic associations." Stats.1951, c. 364, p. 1079, § 11,000, op-

erative Sept. 9, 1953, as amended Stats. 1953, c. 641, p. 1895, § 40.

4. California law makes no distinction between creditors (or debts) of the community and creditors (or debts) of the husband alone. Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641 (1941).

5. "§ 70a. The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered. . . ."

6. "Shares or share accounts of a federal savings and loan association may be purchased by minors or married women, and when so purchased the shares or share accounts are held for the exclusive right and benefit of the married woman or

falls heir to title over the account only if Gerald's creditors could have levied on the account. Section 70e makes such title meaningful by giving appellee the power to avoid any transfer which the creditors could have avoided under California law.

As appellant points out, one of the prerequisites of appellee's power under § 70e is that there have been a transfer. Appellant argues that the one-half of the proceeds which she deposited in the savings and loan account was her separate property and, consequently, there could have been no transfer.

In support of her conclusion, appellant cites California Civil Code § 164,[7] which provided in pertinent part:

. . . whenever any real or personal property, or any interest therein or encumbrances thereon, is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property.

Since the automobile was titled and registered in the names of both Gerald and Joelanne, the argument goes, she acquired her interest through an instru-

ment in writing and can take advantage of the statutory presumption. We cannot agree. Appellant did not necessarily acquire the automobile through the act of having it titled or registered.

Neither Mears v. Mears, 180 Cal.App. 2d 484, 4 Cal.Rptr. 618 (1960), nor Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003 (1932), cited by appellant, compels the conclusion she urges. *Mears*, in fact, implicitly holds otherwise. The court there was concerned with the respective property interests of a husband and wife in two automobiles. One, a 1951 Studebaker which had been purchased with joint funds derived from their respective earnings, was found to be community property. No consideration was given to the fact that title had been taken as joint tenants. The second automobile, a 1955 Buick, had been bought partially with a trade-in automobile which was the separate property of the wife and partially with community funds. Title was taken in the "joint names" of the husband and wife. The court found that the Buick was the separate property of the wife in the proportion which the value of the trade-in

minor, free from the control or lien of all other persons, except creditors. The receipt or acquittance of a married woman or minor is a valid and sufficient release and discharge of the association for any payment or delivery to that person on account of their shares or share accounts." Stats.1951, c. 364, p. 1079, § 11,200, operative Sept. 9, 1953, as amended Stats. 1951, c. 368, p. 1165, § 8.

7. This section was reenacted in substance and recodified as California Civil Code § 5110; Stats.1969, c. 1608, p. 3339, § 8, operative Jan. 1, 1970.
   "§ 164. All other property acquired after marriage by either husband or wife, or both, including real property situated in this State and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State, is community property; . . . . and if acquired by such married woman and any other person the presumption is that she takes the part acquired by her, as tenant in common, unless a different intention is expressed

in the instrument; . . . . The presumptions in this section mentioned are conclusive in favor of any person dealing in good faith and for a valuable consideration with such married woman or her legal representatives or successors in interest, and regardless of any change in her marital status after acquisition of said property.

In cases where a married woman has conveyed, or shall hereafter convey, real property which she acquired prior to May 19, 1889, the husband, or his heirs or assigns, of such married woman, shall be barred from commencing or maintaining any action to show that said real property was community property, or to recover said real property from and after one year from the filing for record in the recorder's office of such conveyances, respectively. (Enacted 1872. As amended Stats.1889, c. 219, p. 328, § 1; Stats. 1893, c. 62, p. 71, § 1; Stats.1897, c. 72, p. 63, § 1; Stats.1917, c. 581, p. 827, § 1; Stats.1923, c. 360, p. 746, § 1; Stats.1927, c. 487, p. 826, § 1; Stats. 1935, c. 707, p. 1912, § 1; Stats.1941, c. 455, p. 1752, § 1)."

automobile bore to the total purchase price. The remainder, i. e., that portion purchased with community funds, remained community property. The court apparently did not deem the fact that title had been placed in the joint names of the husband and wife to be of any significance.

Even if we could conclude that appellant acquired her interest through the act of having it titled or registered, the statutory presumption which she attempts to invoke would apply only if the written instrument did not describe the owners as husband and wife. California Civil Code § 164; *Mears, supra*, 4 Cal. Rptr. at 627. Since the record is silent on this point, appellant cannot invoke the presumption of separate property.

■■ Aside from the written instrument exception and certain others not relevant here, § 164 provided that all property acquired by a husband and wife during marriage was presumed to be community property. A mere change in form will not change the status of property from community to separate. A husband and wife, of course, may change the status by agreement and persuasive evidence of such an agreement will rebut the presumption arising from the form in which the property was previously held. *Mears, supra*; Kenney v. Kenney, 128 Cal.App.2d 128, 274 P.2d 951 (1954).

■ The uncontradicted evidence indicated that the automobile here was purchased with funds derived from a community business. The automobile and its proceeds, consequently, were community property unless there was an agreement to the contrary. Prior to the deposits in the savings and loan accounts, there was no indication of any such agreement. The intent of the bankrupts in titling and registering the

automobile in both names was ambiguous at best. We conclude, therefore, that appellant's contention, i. e., that there could have been no transfer since the $1,000 of the proceeds was originally her separate property, is without merit.

Appellant also argues that California Financial Code § 11,200 automatically freed the $1,000 deposit from her husband's control as a matter of law such that there was required no transfer of any right to her. Appellant is correct that this statute did remove the deposit from her husband's control. Her error lies in the conclusion she draws from this fact. Immediately prior to the deposit, the whole fund constituting the proceeds of the automobile was community property. It therefore was subject to the management and control of appellant's husband. California Civil Code § 172.[8] The physical act of depositing one-half of this fund in the savings and loan account effectively removed it from his lawful possession and control. We have no difficulty concluding that this loss of possession and control amounted to a transfer made or suffered by a debtor.[9]

■ The division of the community property into two separate funds and the deposit of each into a separate savings and loan account on October 31, 1968, is a strong indication, and to us persuasive evidence, of an agreement to hold the accounts as separate property. As already indicated, the deposit by Joelanne effectively stripped Gerald of one of the prime attributes of community property, his right to manage and control that property. As will appear from the analysis of California cases below, however, any such agreement came too late to affect the rights of creditors of Gerald since all such creditors extended credit while the property retained its community status.

---

8. Reenacted in substance and recodified as California Civil Code § 5125; added and amended by Stats.1969, c. 1608, 1609, pp. 3342, 3358, §§ 8, 24, operative Jan. 1, 1970.

9. Section 1(30) of the Bankruptcy Act defines transfer as including "the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof . . . ."

The principle of law which we find controlling in this case has been articulated most frequently by the courts of California where the transformation of property from community to separate has resulted not from a mere agreement but from a court decree which on its face purported to vest the wife with an absolute and unlimited interest in such property. One of the earliest cases, Frankel v. Boyd, 106 Cal. 608, 39 P. 939 (1895) defined the limits of the interest taken by the wife under such a decree by upholding the contention that "the authority of the court to assign all the community property to one of the spouses must be taken and construed as meaning the residue of such property after the payment of existing debts of the husband contracted on the faith of such property." The court made it perfectly clear that the same principle would apply where the transformation was effected by agreement of the spouses.

> Had the husband, by a voluntary conveyance, transferred all the community property to his wife, leaving himself without means, it is not to be doubted but that the property would have been liable to his creditors for existing debts.[10]

This conclusion, of course, also would apply where, as here, the husband retains some property but not enough to satisfy his creditors' claims.

■ It follows from the holding in Frankel v. Boyd, supra, that if Joelanne is said to have received the savings and loan account by agreement with Gerald then she has a right to the residue which remains after the claims of Gerald's creditors existing at the time of the transfer are satisfied and, accordingly, in her own bankruptcy could claim the savings and loan exemption from such residue. It also follows that neither Joelanne nor her trustee has any right or title to any portion of the transferred fund which is required to satisfy those of Gerald's creditors who held unsatisfied claims on October 31, 1968. Having no such right or title, she can claim no exemption from such portion.

■ Appellant points out that in 1927 the California legislature adopted § 161a of the California Civil Code which gives a wife a "present, existing and equal interest" in community property.[11] It is clear, however, that this statute did not alter the principle set out in Frankel v. Boyd, supra. Since that statute was enacted, the California courts have held that a wife, even though she has a present, existing and equal interest in community property, takes an award of community property through a divorce decree cum onere, i. e., subject to the debts of the husband incurred during the marriage. Bank of America National Trust & Savings Ass'n v. Mantz, 4 Cal.2d 322, 49 P.2d 279 (1935); Vest v. Superior Court, 140 Cal.App.2d 91, 294 P.2d 988 (1956); Gould v. Fuller, 249 Cal.App.2d 18, 57 Cal.Rptr. 23 (1967).

■ The fact that the savings and loan account was in appellant's name and was therefore free from her husband's control under California Financial Code § 11,200 no more relieves the fund from preexisting claims than did the court decrees in the aforementioned cases.[12] Section 11,200, furthermore, specifically excludes creditors from its operation.

10. 39 P. at 941.

11. Reenacted in substance and recodified as California Civil Code § 5105; added by Stats.1969, c. 1608, p. 3338, § 8, operative Jan. 1, 1970.

12. See Vest v. Superior Court, supra, 294 P.2d at 991, where the court stated: "It thus becomes clear from the authorities cited that since this was a judgment arising out of a debt of a husband incurred during marriage, the community property is liable by way of satisfaction and the fact that the court may have awarded it to the wife in a divorce action so that legal title now stands in her name, will not relieve it from the burdens with which it was encumbered at the time of the award."

Even if we were to find that the division of the proceeds of the automobile and the deposit thereof into two separate accounts was not sufficient to establish an agreement that the proceeds be held thereafter as separate property, our conclusion would be the same. In Hannah v. Swift, 61 F.2d 307 (9th Cir. 1932), this Court considered the claim of a wife on the occasion of her husband's bankruptcy that she was entitled not merely to an exemption from the community property but to the community property in its entirety to the total exclusion of her husband's creditors. We held there, at 310:

> It is sufficient to say that the courts of California have decided that the community property of the husband and wife is subject to community debts and that the management and control thereof is vested in the husband by the laws of California as declared by the state legislature and by the courts (citing authority). It follows that the [husband's] trustee in bankruptcy, upon an adjudication of bankruptcy arising out of community debts, is entitled to the possession of community property for the benefit of the creditors of the community.

In *Hannah*, as in this case, the wife's claim to the community assets depended largely upon the 1927 statute giving her a present, existing and equal interest in such property. Obviously, this Court did not construe that interest as in any way derogating either the husband's right to manage and control the property or his concomitant right to obligate it for his debts. Although the matter of exemptions was not discussed, we think the necessary implication of the case is that the husband's exercise of his exclusive right to obligate the property elevated his creditors to a position above that of the wife with respect to the priority of their claims to the community property. It held, in other words, that the present, existing and equal interest

of the wife was an interest held subject to the rights of the creditors to whom the property had been obligated by the husband.

 The result which we reach recognizes no anomaly in the law of California. It is both logical and consistent that a wife who, with certain minor exceptions, cannot subject community property to liability for her debts also cannot claim an exemption from it. See Russell v. Laugharn, 20 F.2d 95 (9th Cir. 1927); Smedberg v. Bevilockway, 7 Cal.App.2d 578, 46 P.2d 820 (1935); Grolemund v. Cafferata, supra; General Insurance Co. of America v. Schian, 248 Cal.App.2d 555 (1967), 56 Cal.Rptr. 767; Collier on Bankruptcy, Vol. 1, § 2.2, pp. 114–117.[13]

We also have considered appellant's contention that Gerald Wikes was solvent on October 31, 1968. We cannot say that the finding of the Referee and the District Court to the contrary was clearly erroneous.

Judgment affirmed.

---

13. As appellant points out, and as we have noted above, the California legislature amended the California Code of Civil Procedure § 690.21 and reenacted it as § 690.7 subsequent to the relevant events in this litigation. We decline appellant's invitation to interpret that amendment, and we intimate no view as to the result which would follow if it were applied to facts similar to those in this case.