**In re John Calvin HOUGH, Debtor.**

**Bankruptcy No. 77–02137–P.**

United States Bankruptcy Court,
S. D. California.

May 6, 1980.

Louise D. Malugen, San Diego, Cal., trustee, pro se.

Annette C. Hough, claimant, pro. per.

John Calvin Hough, bankrupt, pro. per.

Jack Krakauer, Passaic, N. J., and Hunter M. Muir, San Diego, Cal., for Harvey W. Totten.

## MEMORANDUM DECISION RE: TRUSTEE'S OBJECTION TO CLAIM NO. 6

ROSS M. PYLE, Bankruptcy Judge.

This matter came on regularly for hearing before this Court on January 25, 1980, Louise D. Malugen, Trustee, appearing *pro se*; Annette C. Hough, Claimant, appearing *in pro. per.*; John Calvin Hough, Bankrupt, appearing *in pro. per.*; and Jack Krakauer and Hunter Muir, Attorneys at Law, appearing for Harvey W. Totten, a creditor of the bankrupt. The matter was continued to February 29, 1980, at which time the aforementioned parties made like appearance. The Court having considered the evidence both oral and documentary, the arguments and briefs of the parties and good cause appearing therefor, makes its Memorandum Decision as follows:

### I

On November 16, 1977, Annette C. Hough (hereinafter referred to as "Claimant") filed her general unsecured claim in the amount of $250,000.00 in the within bankruptcy, which claim was designated claim no. 6. The basis for this claim was listed as a "marital settlement".

On December 7, 1979, the Trustee filed her Objection to Claim No. 6 on the grounds that there was no evidence or proof of the marital settlement attached to the claim.

At the time of the hearing on January 25, 1980, the Court received into evidence Claimant's "Property Settlement Agree-

ment", dated March 1, 1976. That Agreement purported to transfer all of the bankrupt's right, title and interest in and to a bar business known as the The Full Moon to the Claimant as her sole and separate property in consideration of certain "marital differences" between the Claimant and the bankrupt.[1]

Claimant, in her Declaration, in Support of Creditor's Claim No. 6, filed February 25, 1980, partially withdrew her claim leaving a balance claimed of $22,000.00 pursuant to the "Property Settlement Agreement".

### II

At the conclusion of an earlier adversary proceeding between these parties, this Court on April 6, 1978, entered its Judgment and Order Setting Aside Fraudulent Conveyance pursuant to Findings of Fact and Conclusions of Law re: Fraudulent Conveyance [2]. The Court there determined that the transfer of the liquor license of the Full Moon by the Bankrupt to Anjoni, Inc., a corporation wholly owned by the Claimant, was a fraudulent conveyance under California Civil Code § 3439.04 and, therefore, null and void pursuant to § 70e(1) of the Bankruptcy Act [11 U.S.C. § 110e(1)]. Pursuant to that decision, the Claimant returned to the Trustee all proceeds received from her sale of the liquor license. It is the proceeds from that sale that forms the basis for the Claimant's claim against the estate in the amount of $22,000.00 plus interest at the rate of 7% per annum.

Under § 57g of the Bankruptcy Act [11 U.S.C. § 93g], the Claimant can file her unsecured claim against the estate upon surrender of the proceeds from the fraudulent conveyance.[3] However, as with any other creditor, the Claimant must still prove

---

1. The subject "Property Settlement Agreement" is not a formal agreement as a part of a dissolution but merely an agreement between the parties. The Court understands that, although the parties are apparently separated, they have never gone through a formal dissolution.

2. *Malugen v. Anjoni, Inc. etc., et al.*, No. 77–02137, Compl. 2 (S.D.Cal.1978).

3. § 57g provides as follows:

 "The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this [Act,] shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments or encumbrances."

that the bankrupt is indebted to her in the amount of her proof of claim.[4]

If the claimant had given consideration for the transfer by the Bankrupt to her of the Full Moon's liquor license, then she may have a basis for her claim against the estate for the amount of this consideration. *Buffum v. Barceloux Co.*, 289 U.S. 227, 53 S.Ct. 539, 77 L.Ed. 1140 (1933); *Gelinas v. Buffum*, 67 F.2d 380 (9th Cir. 1933); *Barks v. Kleyne*, 15 F.2d 153 (8th Cir. 1926); *Wells v. Lincoln*, 214 F. 227 (9th Cir. 1914). However, in the aforementioned Findings of Fact and Conclusions of Law re: Fraudulent Conveyance, the Court reached the conclusion of law that the transfer of the liquor license by the Bankrupt to Anjoni, Inc. was made without fair consideration.

The Court in *Misty Management Corp. v. Lockwood*, 539 F.2d 1205 (9th Cir. 1976), summarized such a situation as follows:

"Older versions of the Bankruptcy Act did contain provisions penalizing recipients of a fraudulent conveyance. Those provisions have been eliminated, however, and the modern view is that a transferee guilty of a fraudulent behavior may nevertheless prove a claim against the bankrupt estate, once he returns the fraudulently conveyed property to the estate. [citations omitted] A rule to the contrary would allow the estate to recover the voidable conveyance and *retain whatever consideration it had paid therefore.* Such a result would clearly be inequitable." (emphasis added) *Id.* at 1214.

Thus, that Court held that the transferee should be allowed to prove whatever claim it would have had in the absence of its fraudulent behavior.

■ This Court has concluded that Claimant gave no consideration for the transfer by the bankrupt of the Full Moon liquor license to her. Therefore, she has no claim against the estate.

## III

■ At the time the bankrupt and the Claimant entered into the Property Settlement Agreement, the liquor license of the Full Moon was community property and there were numerous trade creditors of the Full Moon. By the terms of this agreement, the bankrupt and claimant intended to change the status of the license to the sole and separate property of the Claimant.

The Court in *Wikes v. Smith*, 465 F.2d 1142, 1147 (9th Cir. 1972), in an analogous situation, held that an agreement transferring community property to the wife as her sole and separate property could not affect the rights of the creditors of the husband since they had extended credit while the property retained its community status.

"The principle of law which we find controlling in this case has been articulated most frequently by the courts of California where the transformation of property from community to separate has resulted not from a mere agreement but from a court decree which on its face purported to vest the wife with an absolute and unlimited interest in such property. One of the earliest cases, *Frankel v. Boyd*, 106 Cal. 608, 39 P. 939 (1895) defined the limits of the interest taken by the wife under such a decree by upholding the contention that 'the authority of the court to assign all the community property to one of the spouses must be taken and construed as meaning the residue of such property after the payment of existing debts of the husband contracted on the faith of such property.' The court made it perfectly clear that the same principle would apply where the transformation was effected by agreement of the spouses.

'Had the husband, by a voluntary conveyance, transferred all the community property to his wife, leaving himself without means, it is not to be doubted but that the property would have been liable to his creditors for existing debts.' [39 P. at 941]

---

4. This is not overlooking the fact that a proof of claim *prima facie* establishes the claim. However, the burden of proof remains on the claimant although the objector initially must go forward and produce evidence to rebut this *prima facie* case. 3 *Collier on Bankruptcy,* ¶ 57.18[5] (14th Ed. 1977).

This conclusion, of course, also would apply where, as here, the husband retains some property but not enough to satisfy his creditors' claims." 465 F.2d at 1147.

Although this case was decided prior to the amendments to the California community property laws giving both spouses equal management and control of the community property,[5] this Court feels the reasoning of *Wikes v. Smith, supra,* would not thereby be undermined.

 Prior to the amendments to the California community property laws, the liability of the community property for the debts of the spouses was coextensive with the right of management and control. The preamble to these amendments indicates that it should remain so; thus the retroactive effect of the amendments would not impair the rights of creditors. [See Pedlar, *The Implications of the New Property Laws for Creditors Remedies in Bankruptcy,* 63 Calif.L.Rev. 1610 (1975)].

Therefore, the community property which the bankrupt and the Claimant attempted to transfer to the Claimant by the Property Settlement Agreement remains liable for debts to creditors who extended credit while the property retained its community status.

### IV

Based on the foregoing, the Court finds that Claim No. 6 should be disallowed in its entirety.

The foregoing shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752.

The Trustee shall submit her order pursuant to this Memorandum Decision within ten (10) days from the date hereof.

---

5. See California Civil Code §§ 5100 *et seq.*