Filed 8/13/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BIJAN BOUTIQUES, LLC, | |
| Plaintiff and Appellant, | G063288 |
| v. | (Super. Ct. No. CIVDS2020995) |
| ROSAMARI ISONG, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Winston S. Keh, Judge.  Affirmed.

Law Offices of Daniel B. Spitzer and Daniel Spitzer for Plaintiff and Appellant.

Nelson, Comis, Kettle & Kinney and Keith H. Fichtelman for Defendant and Respondent.

\*          \*          \*

Bijan Boutiques, LLC (Bijan), appeals from the judgment entered after the court granted a motion for summary judgment in favor of Rosamari

Isong. Bijan's complaint, which is part of its effort to enforce a judgment (the Bijan Judgment) it obtained against Isong's former husband, Richard Milam Akubiro, sought to void the property distribution portion of the marital dissolution judgment entered between Isong and Akubiro.

Bijan argues the marital dissolution judgment was subject to the Uniform Voidable Transactions Act (Civ. Code, § 3439 et seq. (UVTA)) and the judgment was fraudulent because it awarded Isong the couple's only marital property located in the United States, while awarding Akubiro other foreign assets and properties and assigning the Bijan liability to him. According to Bijan, the dissolution judgment "effectively makes enforcement of the Bijan Judgment impossible, without incurring the significant additional expense of attempting to enforce it against property and business interests outside the U.S."

The trial court ruled that Bijan's complaint was barred by Family Code section 916, subdivision (a)(2), which states that "the property received by the person in the [marital dissolution] is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property." We agree and affirm.

FACTS

Isong and Akubiro were married in Equatorial Guinea in 1997 and lived there together until 2006, when Isong moved to the United States and established residency with their children. In 2012, the couple purchased a home in Chino, California, for Isong to reside in with their children. Akubiro never lived at the Chino property and rarely visited there.

In 2014, Akubiro, while residing in Equatorial Guinea, purchased over $447,000 in men's clothing from Bijan, a Beverly Hills designer/clothier.

2

Although not specifically identified as an undisputed fact, the parties appear to agree that Akubiro purchased the clothing to wear, rather than for commercial resale.[1] Akubiro paid $119,616 toward his clothing debt, leaving an unpaid balance of over $327,000.

In 2017, Isong heard rumors that Akubiro had taken additional wives in Equatorial Guinea. In March of 2017, when Akubiro admitted the rumors were true, Isong effectively ended their marriage.

In July 2018, Bijan filed a lawsuit against Akubiro to collect the unpaid balance. Bijan served the lawsuit on Akubiro at the Chino property, by substituted service, in August 2018. Later that same month, Isong filed a petition for dissolution of her marriage to Akubiro and caused a notice of pending action ("lis pendens") to be recorded against the Chino property.[2] Akubiro defaulted in both cases. The court entered judgment against Akubiro in the amount of $327,994 on January 4, 2019.

In July 2019, the court in the marital dissolution action entered a judgment dissolving the marriage. The judgment awarded the Chino property, valued at $630,000, to Isong as her sole and separate property. It assigned other marital properties, identified as quasi-community properties located in Equatorial Guinea and Spain, with an estimated collective value of

---

[1] Invoices dated September 6, 2014, identify items purchased such as shoes priced at $11,500 per pair, numerous sport jackets for $9,500-$12,500 each, a leather blazer for $18,000, several tuxedo jackets for $12,000 each, multiple cotton shirts at $1,500 each, and three pairs of "Special Order Assorted Tuxedo Trousers" for $8,400.

[2] Isong testified she filed the lis pendens because she was concerned Akubiro would attempt to sell the house once he received the divorce papers.

3

over $4 million, to Akubiro as his sole and separate property.[3] The court reserved jurisdiction over additional marital properties, and over the issue of an equalizing payment to Isong. The court also assigned the Bijan debt to Akubiro as his separate obligation, finding that the debt "was not acquired for the benefit of the community."[4]

Bijan filed this case in September 2020, against both Isong and Akubiro, alleging the marital dissolution judgment qualified as a voidable transfer under the UVTA, and seeking an award of damages plus a declaration that the Chino Property is held by Isong in constructive trust and that Bijan is entitled to have the dissolution judgment voided as a sham and a fraud.

---

[3] The property in Spain is described as "Calle De Colonia Varela, 31 28250 Torrelodones Madrid Spain (estimated value of $556,727.85 USD)."

[4] Family Code section 2625 states "debts incurred by a spouse during marriage and before the date of separation that were not incurred for the benefit of the community, shall be confirmed without offset to the spouse who incurred the debt."

Although Bijan argues there is no evidence to support this finding in the dissolution judgment, Isong points out that personal clothing is generally considered to be the separate property of each spouse in a marital dissolution. Moreover, by the time Akubiro purchased the clothing from Bijan, he and Isong had been living apart and in different countries for several years.

While Bijan asserts "[t]here is no question that the obligation underlying the Bijan Judgment was incurred as a community debt," its only support for that assertion, offered in the trial court, was that Akubiro "is the pastor of a church and . . . it is logical that he must dress in fine attire." Bijan offered no evidence that Akubiro wore his fine clothing while engaged in his pastoral duties, let alone explained how his doing so would have benefitted his marital community.

4

Isong moved for summary judgment based on Family Code section 916, subdivision (a)(2), which states that "[t]he separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property."

The court granted summary judgment. It explained that although our Supreme Court has carved out an exception to section 916, allowing a claim to be asserted under the UVTA (formerly the Uniform Fraudulent Transfers Act)[5] to challenge a marital settlement agreement (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 (*Mejia*)), that exception did not apply here. Since the court itself adjudicated the disposition of the marital property, the court concluded it was not the product of a negotiated settlement.

---

[5] The Legislature amended what had previously been known as the Uniform Fraudulent Transfer Act in 2015 (stats. 2015, ch. 44, §§ 1–15), replacing the word "fraudulent" with "voidable." Although the enactment added specified burdens of proof (Id., §§ 1–3, 6–7, 10), it did not alter the essential elements of a cause of action for a fraudulent or voidable transfer. Thus, as a general rule, we continue to rely on opinions addressing the UFTA. (See Civ. Code, § 3439.14, subd. (d) [UVTA provisions that "are substantially the same as the [UFTA] provisions" are to "be construed as restatements and continuations" of the former law].)

## DISCUSSION

### I.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, our review is de novo. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 ["We owe the superior court no deference in reviewing its ruling on a motion for summary judgment; the standard of review is de novo"].)

Bijan contends the trial court erred in its determination that Family Code section 916 bars it from attempting to satisfy its judgment against Akubiro by executing on the Chino property. Bijan argues that the court's judgment in the marital dissolution case was a transaction that could be declared void under the UVTA based on evidence that Isong pursued the marital dissolution with the specific goal of preventing Bijan from satisfying its judgment by executing against the Chino home, which was the only marital property located in California.

### II.

### FAMILY CODE SECTION 916

Until 1984, the rule was that "a spouse who received community property after a dissolution of marriage was liable for the community debts incurred by the other spouse during the marriage." (*Mejia, supra,* 31 Cal.4th at p. 665.) There was no need to establish any unfairness in the marital property division.

However, in 1984, "'[t]he Legislature determined that, under most circumstances, after a marriage has ended, it is unwise to continue the liability of spouses for community debts incurred by former spouses.'" (*Mejia, supra,* 31 Cal.4th at p. 665.) Thus, the Legislature enacted former Civil Code

6

section 5120.160, which became Family Code section 916 in 1992. (*Mejia* at p. 665.)

As our Supreme Court explained in *Mejia*, "[w]hen the Legislature enacted former Civil Code section 5120.160, it contemplated that "'[i]n allocating the debts to the parties, the court in the dissolution proceeding should take into account the rights of creditors so there will be available sufficient property to satisfy the debt by the person to whom the debt is assigned, provided the net division is equal.'"'" (*Mejia, supra,* 31 Cal.4th at p. 665)

Here, the court in the marital dissolution case did just that, allocating both the Bijan obligation and more than enough property to satisfy it, to Akubiro. Indeed, Bijan does not dispute that Akubiro owns significant other property; to the contrary, it offered two witnesses, one in Equatorial Guinea and one in Spain, who confirmed Akubiro was the owner of all the foreign properties assigned to him in the marital dissolution judgment.

III.

THE UVTA

Nonetheless, despite the prohibition in Family Code section 916, Bijan seeks to enforce Akubiro's debt against the property awarded to Isong, arguing that pursuant to the UVTA, the court's decision to assign Isong the home she had resided in for a decade, while assigning to Akubiro the various properties located in the country where he lived, can be declared void because it operated as a fraud on Bijan under the UVTA. We disagree.

The UVTA provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [¶] (1) With actual

7

intent to hinder, delay, or defraud any creditor of the debtor[ or]  [¶]

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation." (Civ. Code, § 3439.04, subd. (a)(1-2).)[6]  If voidability is based on the allegation that a transfer was made without receiving reasonably equivalent value in exchange, then the plaintiff must also establish that the debtor "was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." (Civ. Code, § 3439.05.)

In *Mejia*, the Supreme Court noted that "[o]n its face, the U[V]TA applies to all transfers." (*Mejia, supra*, 31 Cal.4th at p. 664; see also Civ. Code, § 3439.01, subd. (m)), and concluded, based on policy considerations, that when a couple enters into a marital settlement agreement to divide their property in a dissolution action, that agreement can be challenged as an avoidable transaction under the UVTA.

In reaching that conclusion, *Mejia* drew a clear distinction between cases which involve marital settlement agreements and cases which do not:  "When the court divides the marital property in the absence of an agreement by the parties, it must divide the property equally [citation], which provides some protection for a creditor of one spouse only." (*Mejia, supra*, 31 Cal.4th at p. 668.)  By contrast, that statutory requirement of a fair division does not apply in cases where the parties enter into an agreement to divide their property:  "Whenever . . . the parties agree upon the property

---

6        The debtor in this case is Akubiro.  He alone incurred the obligation to Bijan, and he is the sole debtor named in the Bijan Judgment. Although Bijan would have been entitled to enforce its judgment against community property of Akubiro's marriage to Isong, she is not a debtor. Consequently, assertions about Isong's intent in filing for marital dissolution would appear to be irrelevant under the UVTA.

division, no law requires them to divide the property equally, and the court does not scrutinize the MSA to ensure that it sets out an equal division." (*Id.* at p. 666.) In other words, the Supreme Court recognized that a marital settlement agreement, like any other private agreement, can be a vehicle for fraud.

The Supreme Court looked to how courts in other states have "constru[ed] parallel provisions of the UFTA," explaining that in the case of a uniform statutory scheme, consistency of interpretation among jurisdictions is significant. (*Mejia, supra*, 31 Cal.4th at p. 664, citing Civ. Code, § 3439.11.) In making that point, the court cited a string of cases that involved marital *settlements*, rather than cases that challenged the court's division of marital property. (*Mejia* at p. 664, citing *Scholes v. Lehmann* (7th Cir. 1995) 56 F.3d 750, 758–759 (*Scholes*); *Kardynalski v. Fisher* (1985) 135 Ill.App.3d 643; *Dowell v. Boyer* (Okla.Ct.App. 2000) 998 P.2d 206, 209, 212-213; *Greeninger v. Cromwell* (1996) 140 Ore.App. 241; and *Federal Deposit Ins. Co. v. Malin* (2d Cir. 1986) 802 F.2d 12, 18.) In *Scholes*, the court highlighted the same distinction emphasized in *Mejia*: "Douglas's transfers to his ex-wife were lavish, and the principal 'obligation' that they are claimed to have discharged was one created by a voluntary settlement that received no judicial scrutiny." (*Scholes* at p. 758.)

But unlike in *Mejia* and the out-of-state cases it relies upon, there was no negotiated marital settlement agreement here. Instead, Bijan claims it is the court's own "Judgment and [its] subsequent order for

appointment of an elisor to effect a conveyance of the Chino Property" that constitute the relevant "transfer" under the UVTA.[7]

Bijan argues that *Mejia* supports the conclusion that a court judgment could qualify as a voidable "transfer" under the UVTA, claiming that the court's citation to *Britt v. Damson* (9th Cir. 1964) 334 F.2d 896, 899 (*Britt*) reflects that determination. We are not persuaded. It is true *Britt* was cited in *Mejia*, and also that in *Britt* the 9th Circuit concluded a court's division of property in a marital dissolution could theoretically qualify as a fraudulent "transfer" under Washington law. But the *Mejia* case characterizes *Britt* as a "but see" citation, thus identifying it as an outlier from the string of marital settlement cases *Mejia* relies upon. (*Mejia, supra*, 31 Cal.4th at p. 664.)[8]

A court's judgment, the product of its own evaluation of the evidence and the law, is a different creature than a private agreement entered into between spouses. As Bijan acknowledges, when the court renders a judgment in a marital dissolution, it is required to divide the

---

[7] "[A]n elisor is a person appointed by the court to perform functions like the execution of a deed or document. [Citation.] A court typically appoints an elisor to sign documents on behalf of a recalcitrant party in order to effectuate its judgments or orders, where the party refuses to execute such documents." (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020.) As Isong explains, the court appointed an elisor in this case because Akubiro refused to cooperate in effectuating the transfer of the Chino property into her name following the dissolution judgment.

[8] We also note that having been decided in 1964, *Britt* long predates California's enactment of the predecessor to Family Code section 916. Thus, at the time *Britt* was decided, California routinely allowed creditors of one spouse to satisfy their claims out of property awarded to the other spouse in a marital dissolution. That policy has changed.

marital property in a manner that is fair and equal to both parties.  We are required to presume it did so.  (*Wells Fargo & Co. v. City etc. of S.F.* (1944) 25 Cal.2d 37, 40 ["'[e]very presumption is in favor of the validity of the judgment, and any condition of facts consistent with its validity (and not affirmatively contradicted by the judgment roll) will be presumed to have existed rather than one which will defeat it'"].)

Further, it was settled by our Supreme Court as far back as 1891 that once a judgment is final, it cannot be attacked on the basis it is wrong on the merits or was even the product of one party's fraud on the court:  "That a former judgment or decree may be set aside and annulled for some frauds there can be no question; but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. And we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony." (*Pico v. Cohn* (1891) 91 Cal. 129, 133 (*Pico*).)  That rule has not changed.  (See e.g., *Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 725-726 [a judgment cannot be set aside based upon court error]; *Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1156 ["A collateral attack will lie only for a claim that the judgment is void on its face for lack of personal or subject matter jurisdiction or for the granting of relief which the court has no power to grant"].)

Bijan alludes to this well-established rule when it points out that in *Mejia*, the court "noted pointedly that under both federal and state law, a dissolution judgment may be set aside on the ground that it was obtained by *extrinsic* fraud." (Italics added.)  That was the  rule announced in *Pico* in 1891.  Extrinsic fraud—where a party was deprived of an opportunity to participate in the litigation—is grounds for setting aside the judgment,

11

whereas intrinsic fraud—flaws in the proceeding or the substance of the judgment—is not.

When Bijan relies on Isong's alleged fraud in obtaining the court's judgment dividing marital property as a basis for relief under the UVTA, it is making an argument based on a theory of *intrinsic* fraud—i.e., that the substance of the judgment is incorrect—rather than extrinsic fraud. We reject that argument.

We also reject Bijan's suggestion that a judgment obtained by default should not be considered a real judgment because it is "functionally the equivalent of a marital settlement agreement, particularly where the moving petitioner is the only source of evidence on which an adjudicating court can rely in effecting its equalizing calculus . . . . " There is no precedent for the suggestion that judgments are entitled to differing levels of deference based on how they were obtained.

Bijan argues that in the case of default in a marital dissolution case, the court will give the petitioner whatever she seeks. That suggestion is belied by Family Code section 2336, which expressly prohibits the court from basing its judgment on a party's default. Section 2336 states "the court shall . . . require proof of the grounds alleged, and the proof, if not taken before the court, shall be by affidavit." (Fam. Code, § 2336, subd. (a).) And with respect to marital property, the statute requires that "[i]n all cases where there is a community estate, each affidavit or offer of proof shall include an estimate of the value of the assets and the debts the declarant or affiant proposes to be distributed to each party, unless the declarant or affiant has filed, or concurrently files, a complete and accurate property declaration with the court." (*Ibid.*)

12

In accordance with that default standard, Isong provided the court in the marital dissolution case with evidence to support her claims and her requested distribution of marital property, including declarations of appraisers to support her claimed valuation of the properties.

Finally, Bijan relies on two cases, *Frankel v. Boyd* (1895) 106 Cal. 608, 614-615 (*Frankel*), and *In re Spirtos* (9th Cir. 1995) 56 F.3d 1007, 1009 (*Spirtos*), in support of the proposition that California has "a hoary history" of protecting creditor's rights in the wake of a marital dissolution. But *Frankel* was decided nearly a century before our Legislature adopted the predecessor to Family Code section 916, which severely curtailed the earlier right of a creditor to pursue its claim against the property awarded to the nondebtor spouse in a marital dissolution.

And while *Spirtos* was decided in the wake of the changed policy, it supports its conclusion that "[u]nder California law, a divorce decree transfers property only subject to the parties' existing liabilities to creditors," by citing *Frankel* and to two other cases which were also decided prior to the change in law. (*Spirtos, supra*, 56 F.3d at p. 1009, citing *Wikes v. Smith* (9th Cir. 1972) 465 F.2d 1142, 1146-1148, and *Robertson v. Willis* (1978) 77 Cal.App.3d 358, 362-363 Additionally, *Spirtos* involves a marital settlement agreement, rather than a court division of marital property. (*Spirtos* at p. 1008.)

## IV.

### FRAUD

Because we conclude that Family Code section 916 precludes Bijan from seeking to satisfy its judgment against Akubiro out of the property awarded to Isong in the marital dissolution action, we need not address the substance of its fraud allegations.

13

However, some of Bijan's assertions are so extreme they merit our attention. Bijan contends Isong "lied" to the court in the marital dissolution action and acted "like a thief in the night," when she claimed a quasi-community interest in the foreign properties awarded to Akubiro and that she lied about their value when she estimated that the total value was significantly greater than the value of the Chino property that was awarded to her. Bijan explains this alleged fraud was revealed when Isong later testified in a deposition that she believed being awarded an ownership interest in the marital properties located in Equatorial Guinea would have no value to her because she could never have sold them or tapped into their value.

Bijan offers no evidence, beyond the fact that the foreign properties were held in Akubiro's name alone, to suggest they did not qualify as quasi-community property. Under California law, all properties, wherever situated, that are acquired by either spouse while domiciled elsewhere, qualify as quasi-community property if they would have been community property had the acquiring spouse been domiciled in California at the time of acquisition. (Fam. Code, §§ 125, 760.)

Second, contrary to what Bijan suggests, Isong never asserted in her deposition that she believed the Equatorial Guinean properties awarded to Akubiro had no *market* value; instead, her position was that if she had been awarded an ownership interest in those properties in the marital dissolution (rather than the right to an equalizing payment), she would not have been able to enforce that interest because the properties were all held in Akubiro's name and he has significant influence in Equatorial Guinea. None of that suggests the properties do not have significant value that could be tapped by Akubiro's commercial creditors, such as Bijan.

14

Bijan does not dispute Akubiro's ownership of the foreign properties, nor does it assert that their value would be insufficient to satisfy its judgment against Akubiro. To the contrary, Bijan provided evidence from witnesses in both Equatorial Guinea and Spain, who confirmed Akubiro's ownership of the listed properties and did not dispute that they have substantial value. The estimated value of the Spanish property alone would be sufficient to satisfy Bijan's judgment. There is nothing in our record to suggest that Spain would not cooperate in Bijan's effort to enforce a valid foreign judgment.

V.

DECLARATORY RELIEF CAUSE OF ACTION

Bijan also argues that even assuming it cannot state a claim under the UVTA, the trial court erred by summarily adjudicating its cause of action for declaratory relief. According to Bijan, its claim for declaratory relief is warranted based on two distinct equitable arguments.

First, Bijan claims that "Isong will be unjustly enriched if the Dissolution Judgment is allowed to stand [because it] excus[es] her from any liability for the community debt incurred by her husband." But that assertion fails for the same reason the UVTA claim fails: it asks the court to allow Bijan to enforce its judgment against the property awarded to Isong in the marital dissolution, despite the fact that Bijan's judgment was not assigned to her. That is what Family Code section 916 is designed to prohibit. [9]

_____

[9] Additionally, the argument ignores the marital dissolution court's specific finding, in its judgment, that Akubiro's choice to spend an enormous sum on personal clothing, while living separately from his wife in a foreign country, was not done for the benefit of the community.

15

Bijan also argues declaratory relief is justified because "this is an appropriate case for application of the equitable doctrine of marshaling assets." (See Civ. Code, § 3433.) Civil Code section 3433 states that when a judgment creditor is entitled to resort to any one of several funds for the satisfaction of its claim, but a second creditor is limited to only one fund, the second creditor can require the first creditor to seek satisfaction from the other funds so that both creditors can be paid.

Under Bijan's theory, Isong would be the first creditor, who had access to all the properties owned by the marital community in her marital dissolution action, while Bijan is the second creditor who had access to only the Chino property for purposes of collecting its judgment. Under those circumstances, Bijan argues Isong should have been required to leave the Chino property available for Bijan to collect its judgment. Family Code section 916 prohibits that result without regard to the underlying justification.

Finally, Bijan asserts the award of the Chino property to Isong was erroneous because prior to the dissolution, the property was held by Isong and Akubiro in joint tenancy, rather than as community property. Bijan contends that as joint tenancy property, "the Chino Property never should have been subject to division at all under Fam. C[ode,] § 2550." Again we disagree.

Family Code section 2581 requires "[f]or the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property."

16

We find no error in the trial court's award of summary judgment against Bijan.

## DISPOSITION

The judgment is affirmed. Isong is entitled to her costs on appeal.


GOETHALS, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.

17