[Civ. No. 29648. Second Dist., Div. Five. Feb. 3, 1967.]

MARY-LOUISA ROMANCHEK, Plaintiff and Appellant, v. THEODORE ROMANCHEK, Defendant and Respondent.

Gaston, Keltner & Adair and Sidney A. Adair for Plaintiff and Appellant.

Callister & Callister and Reed R. Callister for Defendant and Respondent.

STEPHENS, J.—The plaintiff, Mary-Louisa Romanchek, and the defendant, Theodore Romanchek, were married in Santa Barbara, California on April 23, 1955. At the time of the marriage plaintiff was the owner and sole proprietor of the French School of Dress Design in Los Angeles. At the time of the marriage defendant owned the following property: (1) shares of corporate stock, formerly held by

defendant and his first wife in joint tenancy, and which passed to defendant upon death of his former wife; (2) a trust deed for real property formerly held by defedant and a former wife but sold in 1953 to Mr. Harold M. Robinson; (3) a small bank account; and (4) a life estate in improved realty located at 1114 South Central Avenue, Glendale, California—such realty having passed to defendant upon death of his second wife and having been rented to third parties from time to time.

The real property which is the subject of the interlocutory judgment of partition is located at 300 South Sycamore Avenue, Los Angeles, California, and consists of a residential lot with a six-room, one story house and a garage in the rear. This property was purchased in 1956 from Ida Reid for a contract price of $17,500. A grant deed was signed March 5, 1956, and a title insurance policy dated April 2, 1956, vested title in Theodore Romanchek and Mary-Louisa Romanchek, husband and wife, as joint tenants. Plaintiff and defendant moved into the house located on this property and established residence there. In June of 1956 plaintiff and defendant constructed a rumpus room at the rear of this property at a cost of $4,100.

Purchase of the Sycamore home was made by a total down payment of $4,842, this being paid by three checks ($500 on March 4, 1956, $500 on March 5, 1956, and $3,842 on March 28, 1956), all drawn from the plaintiff's checking account held at all times in the name of Mary-Louisa Maison French School of Dress Design. In addition to the above stated, a promissory note was signed for a trust deed in the amount of $12,658, with the plaintiff and defendant as promisors, to the La Ballona Savings and Loan Association as promisee. Thirty-eight monthly payments of $102 were made on the note, such amounts also being drawn on plaintiff's checking account. On July 2, 1959, the balance of $11,311.51 due to La Ballona Savings on the note was paid from plaintiff's checking account. On July 8, 1959, a full reconveyance for the Sycamore property was issued to plaintiff and defendant, husband and wife, as joint tenants.

Between 1956 and the present, numerous other checks were also drawn on plaintiff's checking account for the following items, in addition to the payments to La Ballona Savings: taxes, assessments, fire insurance premiums, and other expenses for both the real property at 300 South Sycamore,

Los Angeles and real property at 1114 South Central, Glendale.

Prior to 1959 defendant placed plaintiff's name on defendant's securities as joint tenant. The stated purpose was so that plaintiff would receive the stock without the necessity of probate if defendant died first. At the time of the stock title change defendant sought a 50 percent interest in plaintiff's business in exchange for the joint tenancy interest in the stock, which plaintiff stated she never gave. All of said stock was sold for $10,952.87 on June 26, 1959, and this amount was deposited in plaintiff's checking account as defendant had no account of his own at that time. The funds were in plaintiff's account until July 2, when the final payment to La Ballona was made.

On December 28, 1959, plaintiff filed a complaint for divorce against respondent. No final decree was entered, and on March 8, 1962, defendant moved to vacate the interlocutory decree. An order dated December 7, 1962, set aside the interlocutory decree.

On February 15, 1963, plaintiff again filed an action for divorce against defendant. Plaintiff was granted an interlocutory decree of divorce on March 20, 1963. The real property at 300 South Sycamore was adjudged to be the joint tenancy property of the plaintiff and defendant. The school was adjudged to be the sole and separate property of the plaintiff.

On May 29, 1963, the plaintiff, by grant deed, transferred the property at 300 South Sycamore to one Pauline N. Reedy, and on the same day said Pauline N. Reedy, by grant deed, transferred the same property back to plaintiff.

On July 2, 1963, the plaintiff filed a complaint to partition the real property at 300 South Sycamore by private sale, and requested the court to distribute the proceeds according to the interests found to be owned by the respective parties.

### Issues

 1. Did the trial court abuse its discretion in holding the proceeds from the sale of corporate stock to be the defendant's separate property? No.

In its finding VI, the trial court held that the $11,311.51 final payment on the Sycamore property trust deed was made from defendant's separate property. These funds were primarily the result of the sale of defendant's stock. The plaintiff contends the trial court erred in determining the

corporate stock was defendant's separate property. Plaintiff contends the evidence establishes a gift of one-half of this stock was made by defendant to plaintiff. Defendant denies any gift, claiming that at all times the stock was his alone, acquired as the surviving joint tenant upon the death of a former wife. Defendant stated he did, however, desire plaintiff to enjoy this same advantage of receipt of title by survivorship which he had experienced, in the event he predeceased plaintiff. The title to said stock was placed in joint tenancy by defendant for convenience only and for the purpose of accomplishing that aim. Plaintiff in her verified divorce complaint filed on February 15, 1962, alleged that the stock in question was held in joint tenancy "for convenience only," thus corroborating defendant's (and the court's) position. Plaintiff received money from stock dividends only as defendant felt she needed it, all possession and control remaining in defendant.

Plaintiff merely reargues the evidence, but upon conflicting evidence the trial court determined the rebuttable presumption of a gift was refuted. Substantial evidence supports the trial court's findings. (*Butler* v. *Butler,* 188 Cal.App.2d 228 [10 Cal.Rptr. 382] ; *Crook* v. *Crook,* 184 Cal.App.2d 745, 748 [7 Cal.Rptr. 692] ; *DePuy* v. *Sullivan,* 168 Cal.App.2d 292, 293 [335 P.2d 750].)

2. Did the trial court abuse its discretion in denying plaintiff the right to a detailed accounting? No.

█ Plaintiff's action is equitable in nature. The trial court ascertained that the total of each party's respective contribution established that the defendant had contributed in excess of 50 percent of the total invested in the Sycamore property. The findings to that effect are based upon substantial evidence. No more detailed accounting is necessary. Any indefiniteness as to specific amounts within the findings of the lower court could not prejudice plaintiff. The total result of the trial court's findings is an unartful accounting quite adequate under the evidentiary circumstances.

█ In findings VII, VIII, IX, X, XII and XIII, the trial court found that sums paid for taxes, for assessments, for construction of the rumpus room, and for fire insurance, and which were paid from plaintiff's account were community funds. The court further found that defendant paid $3,800 of the $4,000 down payment from his separate property; and that defendant did contribute other community funds to the benefit of the Sycamore property.

There is substantial evidence from the testimony that the defendant received $4,000 as payment on a trust deed on property sold by defendant before his marriage to plaintiff in 1955, and that this was the source of the $3,800 down payment made with defendant's separate property.

Plaintiff argues that the many payments made by her from the school account, which were found by these findings of fact to be community property, were in fact her separate property. The nature of these sums will be determined by their source.

The sums we are concerned with total $45,846.49, deposited by plaintiff and by defendant as aforesaid to the account throughout the period from 1957 to 1961. Defendant at no time relinquished to the plaintiff his community interest in her earnings. Thus, such earnings as reflected the community efforts of the wife would be community property under Civil Code section 164.

Although the School of French Design had been previously decreed to be plaintiff's separate property, this decree did nothing more than hold that the registered d.b.a. title of the school and whatever school assets there were are plaintiff's separate property.

The school was small, and its activities consisted of plaintiff's teaching, designing, pattern making, and the like. Plaintiff was "very active" and worked at the school "all the time" as its sole worker. The income derived from this school resulted from the personal character, ability, energy and capacity of the plaintiff, and was community property while the parties lived together. (Civ. Code, § 146; *Pereira* v. *Pereira*, 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880].) Until December of 1959 the parties lived together as husband and wife.

From late 1959 until some time in early 1962 the parties lived separate and apart. During this period plaintiff's school income was her separate property. (Civ. Code, § 169; *Makeig* v. *United Securities Bank & Trust Co.*, 112 Cal.App. 138, 143 [296 P. 673].) Defendant returned to the Sycamore property in early 1962, although occupying separate quarters on the property. At this same time in 1962 the defendant moved to set aside the first interlocutory divorce decree; this was granted in December 1962. Plaintiff subsequently sued for divorce in March of 1963.

Before the initiation of the 1963 divorce, the Sycamore house had been fully purchased, the rumpus room had been

built and paid for, upkeep had been paid, as well as taxes and assessments. Payments were generally made from the school account, defendant depositing money therein on occasion since he did not maintain an account of his own except during the period the rumpus room addition was constructed, and this for convenience of payment of bills resulting therefrom.

During such time as the parties were separated, plaintiff's payments for and on behalf of the Sycamore house are argued to have been from separate funds, her earnings. This she had failed to prove. The same school account was used throughout. Commingling of funds resulted, and no testimony established what expenditures were from existing community funds or from separate (new) income.

Assuming, however, for purposes of discussion, that plaintiff expended only her separate income on the property during this period of separation, at most, the facts establish this total at no more than some $3,000. Against this amount are the separate property contributions by defendant, found by the trial judge to total in excess of $15,000, as aforesaid, and to which defendant has waived any claim to the portion exceeding one-half of the property's value when sold. Plaintiff therefore has contributed less than 50 percent of the total investment.

3. (a) Did the lower court abuse its discretion by ordering a partition sale? No.

In *Morrison* v. *Bowman,* 29 Cal. 337, 354, the judgment declared certain deeds void though plaintiff had asked for no such relief. The court reversed on the ground that it was not the duty of the court to extend a real or supposed benefit for which there was no desire manifested.

In *Nevada County & Sacramento Canal Co.* v. *Kidd,* 37 Cal. 282, 304, 305, the Supreme Court stated that the trial court is not bound to give relief other than that specifically sought except in its sole discretion. When plaintiff pleads and tries a case, to permit later revision of the prayer and relief granted would allow plaintiff to mislead defendant and obtain relief on matters not at issue below.

While here the matter is one of degree of relief, not alternative reliefs or relief of a different cause of action, the principle is consistent. Plaintiff's prayer asked for a sale, and defendant was thus not obligated to present the extra proof otherwise required for the relief which was granted. Plaintiff sought a partition by sale, and having obtained such an order, may not now say she doesn't want it.

344

(b) Is the trial judge's finding of great prejudice, upon which the partition by sale was based, supported by the facts? Yes.

In *Priddel* v. *Shankie,* 69 Cal.App.2d 319 [159 P.2d 438], partition by sale was granted of a city lot 40 x 140 feet, located in the middle of a block. Upon this site were two dwellings—one with 4 rooms and the other of 2½ rooms. Also, there were two garages, one double and one single. The evidence was held to support the determination of great prejudice.

■ In *Sting* v. *Beckham,* 94 Cal.App.2d 823, the court stated at page 825 [211 P.2d 586] : "*Priddel* v. *Shankie* . . . is one of the cases which esatblishes the principle that the character and location of the property is itself evidence from which a court may infer that partition cannot be made without great prejudice to the owners. ■ The question of 'great prejudice to the owners' is a factual question to be determined by the trial court and, as here, where there is sufficient evidence shown, even though conflicting, from which the trial court might reasonably draw the conclusion that partition would result in 'great prejudice to the owners,' and ordered a sale of the property, its determination will not be disturbed on appeal. [Citation.]"

■ In the instant case plaintiff's complaint states: ". . . said property cannot be divided and partition made without a great prejudice to the owners thereof." From the nature of the property and the plaintiff's own pleading, there are sufficient facts to support the lower court's finding of great prejudice.

*Williams* v. *Wells Fargo Bank etc. Co.,* 56 Cal.App.2d 645, 647 [133 P.2d 73], relied upon by plaintiff, stated that "partition in kind is favored by the law." As stated in *Priddel* v. *Shankie, supra,* at page 326, "this case merely decided that in reference to a rectangular piece of land, a mile long and a half mile wide, containing 310 acres, a finding that the property could not be partitioned in kind without great prejudice, was not supported by sufficient evidence."

Judgment affirmed.

Kaus, P. J., and Hufstedler, J., concurred.