[Civ. No. 19126. Second Dist., Div. One. Feb. 9, 1953.]

RUTH MIRIAM GELLER, Respondent, v. JOSEPH S.
GELLER, Appellant.

Edward H. Blixt for Appellant.

Louis P. Pink for Respondent.

WHITE, P. J.—Defendant husband appeals from an interlocutory judgment of divorce granted to the plaintiff wife, asserting as grounds for reversal that the court erred (1) in finding the home of the parties to be community property and awarding it to the wife; (2) in awarding attorney's fees in excess of the amount prayed for in the complaint; and (3) in ordering excessive monthly payments of alimony and attorney's fees.

The findings of extreme cruelty by the husband toward the wife are not attacked, are amply supported by the evidence, and justified the court in awarding the property in dispute to the wife, if the property was properly found to be community. (Civ. Code, § 146, subd. 1; *Barham* v. *Barham,* 33 Cal.2d 416, 431 [202 P.2d 289], and cases cited.)

The parties were married in New York City in 1920 and separated in Los Angeles in 1951. They had three children, two of whom at the time of trial had reached majority, the third child then being 18 years of age. Custody of the minor child was awarded to the mother, with visitation rights in the father.

It appears that in September 1943, the parties purchased a home in Los Angeles for $4,750, making a down payment of $1,500, the balance of the purchase price being represented by a note and deed of trust. (The fact that title was not taken in the names of the parties, but was held for their benefit by one Blankenship is of no importance in determining the issues presented by this appeal.) Of the $1,500 down payment, the wife contributed $750, her separate property acquired from the estate of her father, and the husband furnished $750 from accumulated earnings. The monthly payments on the deed of trust were $36.07, and these payments were made regularly from September, 1943, until the time of trial in October, 1951. The monthly payments were on account of principal and interest only and did not cover insurance or taxes. At the time of trial there still remained a principal balance on the trust deed of $2,430, indicating that there had been a reborrowing or refinancing of the loan, although the record does not disclose the facts in this regard.

Appellant asserts that there is "absolutely no evidence" justifying the finding that the real estate in question was community property; that all the monthly payments from 1943 to 1951 were made from defendant's pension check. "This pension check," it is asserted, "was the separate property of the defendant, as it was for personal injuries he suffered in World War I, two years before he was married." Further discussing the evidence, appellant states: "The defendant was an epileptic because of his injuries received out of World War I, and was subjected to periodic seizures. He was physically unable to work steady. On the other hand there was no evidence at the time of trial that the plaintiff was unable to work, or that she was unable to support herself either from her earnings or her own separate property. There was some evidence that she inherited property from her father in the State of Washington, but there was no evidence as to the extent of this property she holds. The uncontroverted evidence also established that the defendant had an income of approximately $90.00 to $100.00 a month, plus his $72.00 monthly pension check." Appellant further argues that the court awarded separate property of the defendant to the wife, referring, however, only to some remarks of the court contained in the reporter's transcript and not to any findings of fact or conclusions of law.

In contrast to appellant's version of the record, there was substantial evidence to support findings of acts of mental and physical cruelty by the defendant over a period of many years, the court finding as follows: "That the defendant has, for many years prior to their separation as aforesaid, remained away from his home and from his family for nights at a time during which he engaged in gambling. That continuously during a period of many years prior to the separation of the parties hereto the defendant has been a chronic and incurable gambler and has lost or dissipated his earnings and any other money which has come into his possession by betting on horse races, and at card games, and that he has, during said period, gambled and lost money which was necessary to feed the plaintiff and the children of the parties hereto, as well as money which he received but which did not belong to him and that by reason thereof, it becomes necessary for the plaintiff to, and that she sought and obtained employment at cleaning homes, taking in sewing for others so as to thereby earn enough money with which to feed the defendant and their children."

■ With reference to the assertion that the monthly payments on the purchase of the home property were made from defendant's separate funds, to wit, his pension check, the court found as follows:

"That defendant received, at the time when said real estate was purchased as aforesaid, and ever since has received, and now receives, the sum of $72.00 monthly as disability benefits from the United States Government, and that defendant has paid said $72.00 each month as well as certain other sums of money which were earned by him to plaintiff and that said monies were commingled so that each is indistinguishable from the other, and that from said commingled funds she has paid $36.07 each month as a payment on principal and interest on the aforesaid bank loan thereby keeping said bank loan in good standing and thus providing a home and shelter for his wife and children. . . ."

The evidence adduced at the trial amply supports a finding that the funds were commingled. It further presents the picture of a husband who over a long period of years persistently refused to meet his family obligations of support, dissipating his earnings at gambling. Aside from the pension check, the husband's contributions to the support of his family of a wife and three children were only what few dollars the wife could persuade him to part with from time to time for food, most of his earnings being reserved for his gambling. There was evidence that on occasions he had large sums of money on his person, but his family derived no benefit therefrom. The evidence further supports the finding made by the court that the family of the parties was only held together "by the unselfish efforts and sacrifices of the plaintiff." From the evidence as disclosed by the record, it was reasonable to conclude that the monies represented by the pension check were handed over to the wife in lieu of funds which should have been furnished by the defendant from his earnings for the support of his family. Moreover, the manner in which the property was acquired, by contributions from both parties during marriage, and their clear intention thereby to provide a home for themselves and their children, further support the conclusion that it was their mutual intention that the property should be community. ■ The intention of the parties in this respect may be shown by circumstantial as well as direct evidence (*Frymire* v. *Brown*, 94 Cal.App.2d 334, 339 [210 P.2d 707]).

■ Further, the act of turning over the check to his wife

for the support of the family evinces an intention on the part of the husband to treat the proceeds of the check as community property. There was substantial evidence to support the trial court's conclusion that the husband had failed to sustain the burden of showing that property which under the usual and ordinary presumptions would be community was in fact his separate property.

The decision of this court is made without regard to respondent's contention that appellant failed in his proof because he failed to show by a preponderance of the evidence that his pension was his separate property in that, under various laws of the United States, it might appear that the monies due thereunder were property of the community. No evidence of any importance was adduced on this subject. A decision on this point if one could be made under the evidence presented, is unnecessary in view of this court's conclusions as hereinbefore expressed.

■ There is no merit whatever to the contention that the court erred in awarding $350 attorney's fees after the trial of a contested action. The plaintiff's complaint contained a prayer for attorney's fees in the sum of $150, based on an assumed uncontested action. The sole case cited by appellant, *Buswell* v. *San Francisco*, 89 Cal.App.2d 123 [200 P.2d 115], supports the court's action in this regard, holding that it was immaterial that a formal amendment to the complaint was not made. No contention is offered that the award of fees was excessive or constituted an abuse of discretion.

■ Appellant's final contention is that the court could not equitably order the husband to pay $25 per month on attorney's fees, $60 per month alimony and $36.07 per month for payments on the trust deed on the home property, when his (the husband's) gross income was less than $170 per month. This contention is based upon appellant's version of the evidence. The precise amount of appellant's income was left in doubt because of his failure to make a full disclosure to the court, and further because of his unreliability as a witness. Better evidence than his testimony was available, but appellant chose not to produce it.

For the reasons stated, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 7, 1953.